UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

ELJAHSON GARCIA,

                           Defendant.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CR-558 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On November 6, 2018, Eljahson Garcia pled guilty to Count One of a two-count Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Eljahson Garcia is hereby sentenced to 21 months of incarceration to run consecutively to any undischarged term of imprisonment resulting from a pending parole violation, 3 years of supervised release, criminal forfeiture as agreed, and a $100.00 special assessment.

## BACKGROUND

On September 14, 2017, the United States filed a Criminal Complaint alleging on or about that date, Eljahson Garcia ("Defendant") knowingly and intentionally possessed, with intent to distribute, a controlled substance containing cocaine base and knowingly and intentionally used, carried, and possessed one or more firearms during and in relation to said drug trafficking crime. Compl. at 1, ECF No. 1. On October 12, 2017, a Grand Jury returned a two-count Indictment charging Defendant with: (1) Cocaine Base Distribution, in violation of 21 U.S.C. § 841(a)(1); and (2) Unlawful Use of Firearms, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Indictment ¶¶ 1-2, ECF No. 7. The Indictment also included criminal forfeiture allegations as to both counts. *Id.* ¶¶ 3-6. On November 6, 2018, Defendant pled guilty to Count One of the Indictment pursuant to a plea agreement. *See* Plea Agreement ¶ 1, ECF No. 29.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on July 9, 1995 in Utica, New York. Presentence Investigation Report ("PSR") ¶ 28, ECF No. 34. He is the sole child born to the consensual union of Jose

Garcia and Rene Acosta. *Id.* Defendant's father lives in Rome, New York and suffers from arthritis. *Id.* He was also diagnosed with bipolar disorder but was never medicated or treated for this condition. *Id.* ¶ 30. Defendant's mother passed away in 2012 from medical complications related to HIV. *Id.* ¶ 28. Defendant has four paternal half-siblings and five maternal half-siblings. Defendant is not close with his siblings, though he noted his older paternal half-siblings are aware of his legal situation. *Id.* ¶ 29. Defendant's maternal half-siblings were raised by a maternal aunt, but he was not raised with them because his father wanted him to have nothing to do with his mother's side of the family. *Id.* ¶ 32.

Defendant's paternal aunt, Maria Rivera, took guardianship of him when he was several months old because his mother, who was addicted to both crack cocaine and heroin, had left him alone in the house and his father was in prison at the time. *Id.* ¶¶ 28, 30. Ms. Rivera raised Defendant in Brooklyn, New York under adequate financial circumstances. *Id.* ¶ 30. In 2006, Defendant moved to Utica, New York to live with his father because he wanted to develop a relationship with his father. *Id.* Defendant stated his father was rigid, strict, and both physically and mentally abusive towards him. *Id.* In 2014, Defendant returned to Brooklyn to live with Ms. Rivera, who has stressed the family remains supportive of Defendant. *Id.* ¶¶ 30, 31.

Defendant advised he never knew who his mother was before she passed away. *Id.* ¶ 32. When he learned her identity, he realized he saw her in his Brooklyn neighborhood during his childhood. *Id.*

Defendant has never been married nor has he fathered any children. *Id.* ¶ 35. In approximately 2017, Defendant commenced a romantic relationship with Natasha Washington, who lives in Brooklyn with her family. *Id.* ¶ 34. He described their relationship as good. *Id.* She is aware of Defendant's arrest and conviction and remains supportive. *Id.*

Defendant has been housed at the Metropolitan Correctional Center ("MCC") in New York, New York since his arrest for the instant offense on September 14, 2017. *Id.* ¶ 36. According to the Bureau of Prisons SENTRY database report, Defendant has incurred seven disciplinary infractions during his time at the MCC, including fighting with another person, assaulting without serious injury, and possessing a dangerous weapon. *Id.* Defendant has been employed as a unit orderly. *Id.*

Defendant has experienced issues with his physical health. Defendant reported he was diagnosed with asthma as a child and uses an inhaler as needed. *Id.* ¶ 38. On January 19, 2017, Defendant was shot in the left wrist while outside of a club in Wilkes Barre, Pennsylvania. *Id.* ¶ 39. Defendant advised he cannot fully bend his wrist or fingers on that hand. *Id.* In December 2018, Defendant fell out of the top bunk of his cell at the MCC and hit his head on the wall. *Id* ¶ 40. He reported he still has a bump on his head and experiences headaches and neck pain as a result. *Id.* Defendant stated that on December 22, 2018, MCC staff injured his shoulder while they were taking him to the Special Housing Unit ("SHU"), and he has not been able to fully raise his right arm since. *Id.* ¶ 41.

With respect to Defendant's mental health, Defendant recalled he participated in talk and art therapy for about a year when he was in fifth grade. *Id.* ¶ 43. Defendant disclosed that when he was seven years old, his maternal uncle sexually molested him on a couple of occasions. *Id.* ¶ 33. He never disclosed this abuse to anyone. *Id.* Defendant also reported while he was in the SHU, he experienced racing thoughts. *Id.* ¶ 44. He has not requested or received mental health treatment while at the MCC. *Id.*

Defendant has a history of substance abuse issues. Defendant first tried marijuana and ecstasy when he was 16 years old. *Id.* ¶ 45. Defendant estimated he spent about $100.00 per day

on marijuana and $45.00 per day on ecstasy. *Id.* Defendant began occasionally using crack cocaine when he was 17 years old. *Id.* Defendant first tried alcohol when he was 18 years old and only drank alcohol sporadically thereafter. *Id.* After Defendant was shot in 2017, doctors prescribed him opiate pain killers; when his prescription ran out, Defendant began purchasing pain killers "on the streets," costing him about $30.00 per day. *Id.* Defendant reported his drug and alcohol use continued until his arrest for the instant offense, and he has never participated in substance abuse treatment. *Id.*

Defendant received his General Educational Development degree while attending West Scranton High School in Scranton, Pennsylvania in 2016. *Id.* ¶ 46. He did not provide information as to how he financially supported himself prior to his arrest for the instant offense. *Id.* ¶ 54. Defendant reported he worked for Luna Park during the summer of 2014 working the game venues. *Id.* ¶¶ 55-56.

Defendant's criminal history includes prior convictions for Firearm Carried Without License and Intent to Possess Controlled Substance in Lackawanna County, Pennsylvania. *Id.* ¶ 20. The United States Department of Probation ("Probation") reports Defendant is in violation of his probation for that offense as a result of the instant offense. *Id.* The case agent has also informed Probation that Defendant is an alleged associate of the Gondo World street gang, a subset of the Bloods street gang. *Id.* ¶ 6.

With respect to the instant offense, on July 24, 2017, Judge Michael J. Barrasse of the Lackawanna County Court in Scranton, Pennsylvania issued a bench warrant for Defendant for a violation of parole in connection with his prior firearm offense. *Id.* On September 14, 2017, law enforcement officers executed the warrant at Defendant's apartment in Brooklyn, New York. *Id.* ¶ 4. An officer stationed outside the apartment observed Defendant throw a Smith & Wesson .40

caliber pistol out of a bedroom window. *Id.* Officers also observed clear Ziploc bags containing smaller clear Ziploc bags of a substance later identified as cocaine base in plain view on the bedroom floor. *Id.* ¶ 5. The officers recovered the weapon and subsequently arrested Defendant. *Id.* ¶ 4. In total, the officers recovered 0.7515 grams of cocaine base with a 68.3% purity. *Id.* ¶ 5. Defendant has been incarcerated since his arrest. *Id.* ¶ 52.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's criminal activities funneled illegal and dangerous drugs into the community, and his possession of a firearm in connection with these activities placed the community at further risk. The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, and specifically from turning to sell illicit substances. It also seeks to protect the public from Defendant's conduct in the future. More generally, the Court's sentence sends a message to others that these crimes carry a risk of punishment that outweighs any potential gains.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Indictment, which charged Defendant with Cocaine Base Distribution, in violation of 21 U.S.C. § 841(a)(1). *See* Plea Agreement ¶ 1. By statute, Defendant faces a maximum term of imprisonment of 20 years. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C). Defendant also faces a minimum term of supervised release of three years, *id.* § 841(b)(1)(C); a maximum fine of $1,000,000.00, *id.*; a mandatory special assessment of $100.00, 18 U.S.C. § 3013; and forfeiture, *see* Plea Agreement ¶¶ 6-11; Order of Forfeiture, ECF No. 33. Defendant is statutorily eligible for between one and five years probation because Count One is a Class C felony. *Id.* § 3561(c)(1).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

The applicable Guideline for violations of 21 U.S.C. § 841(a)(1) is Guideline § 2D1.1(a)(5). *See* United States Sentencing Commission, Guidelines Manual ("USSG") § 2D1.1(a)(5). USSG § 2D1.1(a)(5) instructs the Court to apply the base offense level specified in the Drug Quantity Table set forth in USSG § 2D1.1(c). USSG § 2D1.1(c)(14) provides a base offense level of 12 for offenses involving less than 2.8 grams of cocaine base. The instant offense involved 0.7515 grams of cocaine base. *See* PSR ¶ 10.

Because the instant offense involved the possession of a firearm, the offense level is increased by two levels. USSG § 2D1.1(b)(1). Because Defendant has clearly demonstrated acceptance of responsibility for his offense, the offense level is decreased by two levels. USSG § 3E1.1(a). Accordingly, Defendant's total offense level is 12.

All parties agree with this offense level calculation, but they disagree as to whether Defendant's sentence should run concurrently to or consecutive with any undischarged term of imprisonment in connection with any term of imprisonment for a violation of parole or probation pending in Pennsylvania. USSG § 5G1.3(d) provides the Court may impose a sentence "to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." Application Note 4(C) provides:

> [I]n cases in which the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense and has had such probation, parole, or supervised release revoked . . . , the Commission recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation.

Probation argues Defendant's term of imprisonment should run consecutively to any undischarged term of imprisonment for the pending parole or probation violation, citing Application Note 4(C). PSR ¶ 62. Defendant argues, "given all the circumstances of [his] life and the crime of conviction in this case," he should receive a sentence that "run[s] concurrently to any sentence, if any, imposed in Pennsylvania for violating his probation." Def. Sentencing Mem. ("Def. Mem.") at 2, ECF No. 36. The Government does not take a position in its written submission to the Court as to whether Defendant's term of imprisonment should run consecutively or concurrently. *See* Gov't Sentencing Mem. ("Gov't Mem."), ECF No. 37.

Given a total offense level of 12 and a criminal history category of III, the Guidelines suggest a term of imprisonment of 15 to 21 months. USSG Ch. 5, Part A. All parties agree with this Guidelines calculation. *See* PSR ¶¶ 10-18; Def. Mem. at 2; Gov't Mem. at 3. The Guidelines also recommend a term of supervised release of three years, USSG §§ 5D1.2(a)(2), 5D1.2(c); and a fine of between $5,500.00 and $1,000,000.00, *id.* §§ 5E1.2(c)(3)–(4). According

8

to Probation, Defendant appears unable to pay a fine. PSR ¶ 60. The Guidelines further suggest Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

Probation recommends a sentence of 21 months custody to run consecutively to any undischarged term of imprisonment resulting from a pending parole or probation violation, followed by a two-year term of supervised release with special conditions. Probation Sentencing Recommendation at 1, ECF No. 34-1. Defense counsel requests a sentence of 366 days custody to run concurrent with any sentence imposed in Pennsylvania for violation of parole or probation. Def. Mem. at 2. The Government recommends a sentence within the Guidelines range of 15 to 21 months. Gov't Mem. at 3.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor is not relevant to Defendant's sentence.

## CONCLUSION

A sentence of 21 months of incarceration to run consecutively to any undischarged term of imprisonment resulting from a pending parole violation, to be followed by 3 years of supervised release, criminal forfeiture as set forth in the Order of Forfeiture, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, to the extent it is not inconsistent with this opinion. Specifically, the Court notes the corrections that this Court—not Magistrate Judge Vera M. Scanlon—took Defendant's guilty plea on November 6, 2018 and that the statutory minimum period of supervised release is three years, not the two-year term recommended by Probation. The Court imposes the special conditions of release proposed by the Probation Department.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 31, 2019
Brooklyn, New York